## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DERRICK CRUZ,**

      **Petitioner,**

**v.**                                                          **Civil Action No. 1:19cv115**
                                                               **(Judge Kleeh)**

**F. ENTZEL,[1]**

      **Respondent**.

## REPORT AND RECOMMENDATION

### I. Introduction

On May 28, 2019, the *pro se* petitioner, Derrick Cruz ("Cruz"), an inmate then-incarcerated at FCI Hazelton[2] in Bruceton Mills, Glenville, West Virginia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a Bureau of Prisons ("BOP") disciplinary hearing in which he was sanctioned with the loss of Good Conduct Time ("GCT"). ECF No. 1. Petitioner filed a motion to proceed as a pauper with his petition. ECF No. 2. Pursuant to a Notice of Deficient Pleading, on July 8, 2019, Cruz paid the $5 filing fee. ECF No. 8.

By Order entered October 8, 2019, the Respondent was directed to show cause why the writ should not be granted. ECF No. 12.  On October 31, 2019, Respondent filed a Motion to Dismiss or for Summary Judgment with a memorandum in support. ECF Nos. 15, 16. Because Petitioner was proceeding *pro se*, on November 6, 2019, a Roseboro Notice was issued, advising Petitioner of his right to respond to the Warden's dispositive motion. ECF No. 17. On January 27,

---

[1] Frederick Entzel is no longer the Warden of FCI Hazelton, having been replaced by Paul Adams. Pursuant to Fed.R.Civ.P. 25(d), Paul Adams is automatically substituted as a party in this matter, and the Clerk will be directed to correct the docket.

[2] Petitioner has since been transferred to FCI Schuylkill, in Minersville, Pennsylvania.

2020, Petitioner filed a response in opposition to Respondent's motion to dismiss.[3] ECF No. 20. On February 10, 2020, the Respondent replied. ECF No. 21. On March 9, Petitioner filed a surreply and a motion for subpoena *duces tecum*. ECF Nos. 22, 23.

This matter is pending before the undersigned for an initial review and Report and Recommendation pursuant to LR PL P 2.

## II. Factual and Procedural History[4]

### A. Conviction, Sentence, and Direct Appeal

On August 15, 1995, in the Middle District of Pennsylvania, Petitioner and three others were charged in a six-count indictment with the commission of various drug-related crimes. Petitioner was charged in three counts: Count One: Conspiracy to Distribute Excess of 50 Grams of Crack Cocaine and Cocaine, in violation of 21 USC §§ 841(a)(1) and 846; Count Two: Narcotics – Sell, Distribute, or Dispense; Aid & Abet, in violation of 21 USC §§ 841(a)(1), (b)(1)(A)(iii); 18:2; and Count Six: Money Laundering, Aid & Abet, in violation of 18 USC §§ 1956(a)(1)(A)(i) and 2.

On January 23, 1996, after a three-day trial, Cruz was convicted on all three charges. ECF No. 88. On May 1, 1996, Cruz was sentenced to a term of 324 months[5] to be followed by a total

---

[3] Attached to Petitioner's response was a letter to the undersigned from his Unit Manager, C.D. Gipe, advising that the reason Petitioner's response was so untimely was because he underwent an emergency hospitalization which prevented his filing his response within the prescribed time period. See ECF No. 20-7.

[4] Unless otherwise noted, the information in this section is taken from Cruz's criminal docket available on PACER and all ECF numbers are from that case. See United States v. Cruz, No. 1:95cr204-1. Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record"); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[5] On October 17, 2008, pursuant to Petitioner's motion under 18 USC 3582(c)(2) and a supplemental motion for a sentence reduction, Petitioner's sentence was reduced from 324 months on each of Counts One and Two to 262 months on each of those counts, with all other provisions of the original judgment remaining in effect. EC No. 237.
Subsequently, on January 31, 2013, an Order Regarding Motion for Sentence Reduction Pursuant to 18 USC § 3582(c)(2) was entered, further reducing Petitioner's sentence from 262 months to 168 months. ECF No. 285.

term of 5 years of supervised release, and fined $6,000.00. ECF No. 131. Judgment was entered the same day. Id.

On May 3, 1996, Petitioner filed a notice of appeal. ECF No. 132. The Third Circuit Court of Appeals affirmed on January 17, 1997 in an unpublished opinion. United States v. Cruz, 1997 U.S. App. LEXIS 2953, 107 F.3d 8 (3rd Cir. 1997).

Petitioner's anticipated GCT release date is March 18, 2021.[6]

### III. The Pleadings

#### A. The Petition

In the petition, Cruz contends that while he was incarcerated at FCI Fort Dix,[7] the BOP violated it own Program Statements and his liberty interest in 41 days of GCT after a BOP Disciplinary Hearing Officer's ("DHO") May 10, 2018 decision found him guilty of a March 23, 2018 [sic] Incident Report charging him with possessing contraband, a cell phone hidden in a book. ECF No. 1 at 5, 7, 9. Petitioner contends that although he was sanctioned on May 10, 2018, he did not receive the "appeal documents" until July 30, 2018. Id. at 9. He further alleges that the offense conviction was wrongful because 1) he did not have an impartial DHO [id. at 6]; 2) the contraband found under his bed was not his and was found in a common area of a cell that he not only shared with 11 other inmates, it was also unlocked, such that "over 300" other inmates could potentially

---

On September 28, 2015, another Order Regarding Motion for Sentence Reduction Pursuant to 18 USC § 3582(c)(2) was entered, further reducing Petitioner's sentence from 168 months to 135 months. ECF No. 305. Finally, on July 12, 2019, a Memorandum and Order granting in part and denying in part Cruz's motion for resentencing and sentence reduction under the First Step Act was entered, granting the motion to the extent that Cruz's 5-year term of supervised release was reduced to 4 years, but denied to the extent that Cruz sought further reduction of his 135-month sentence. ECF No. 342.

[6] See the BOP's online inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited June 4, 2020).

[7] Petitioner was incarcerated at FCI Fort Dix from January 30, 2018 through March 26, 2019; and at FCI Hazelton from April 8, 2019 through May 28, 2019, before being transferred to FCI Schuylkill. See Inmate History ECF No. 16-1 at 11.

have had access to it [id.]; he was not given an appeal within 15 days after the DHO rendered its decision [id.]; and the date the Incident Report was issued and the date a copy of it was delivered [sic] to him were conflicting. Id. at 6, 8.

Petitioner contends that he exhausted his administrative remedies before filing suit. Id. at 9 - 10.

As relief, Petitioner requests that this Court restore his 41 days of GCT, his lost phone and commissary privileges, and expunge the Incident Report from his record. Id. at 10.

**B. Respondent's Motion to Dismiss or for Summary Judgment**

Respondent contends that the petition should be dismissed or summary judgment granted in its favor because Petitioner received the full panoply of due process protections to which he was entitled, as set forth in Wolff v. McDonnell.[8] ECF No. 16 at 6. In Incident Report # 3101872, issued on March 19, 2018, Petitioner was charged with a BOP Code 108, "Possession of Portable Cell Phone Device," a prohibited offense, and the evidence the DHO relied on at its May 10, 2018 Discipline Hearing was sufficient to support a finding of guilt. Id. at 3.

Respondent concedes that Petitioner exhausted his administrative remedies with regards to this claim. Id. at 9.

Attached to Respondent's memorandum in support are a sworn declaration and a number of exhibits.  See ECF No. 16-1.

**C. Petitioner's Response in Opposition**

Petitioner reiterates his arguments and provides greater factual detail regarding his claims than he originally included in his petition; he attempts to refute the Respondent's arguments on the same. ECF No. 20-1. He contends that no adequate investigation of the discovery of the

---

[8] Wolff v. McDonnell, 418 U.S. 539 (1974).

4

contraband items was ever done, because he resides in a 12-man cell and the contraband was found on the floor under his bed, where any other inmate had access and may have left it. Id. at 2. Despite that, he avers that he was the only inmate that was questioned or issued an Incident Report. Id. at 3. He further notes that even though the book had "[p]roperty of Fort Dix" stamped on it, the DHO provided no proof that Petitioner had ever borrowed a book from FCI Fort Dix's library. Id. at 3.

For the first time, Petitioner raises a new claim, arguing that his rights to equal protection were violated, because at FCI Fort Dix, where there is "a big problem with contraband cellular phones," upon discovery of one, in order to ensure that the correct inmate is disciplined, FCI Fort Dix sends the phone to the FBI to break into, to gather information from, to determine who was using it.  Id. at 4.  Because this type of investigation was not afforded to Petitioner, he avers that he was denied his right to equal protection. Id.

Relying on the "A&O Handbook,"[9] Petitioner further argues that the greater weight of the evidence does not support a conclusion that the contraband was his rather than any other inmate's, because the space under each bunk bed is  shared by both inmates in that bunk, both of whom have equal access to the space to store footwear. Id. at 5. He argues that because the space beneath the bed is a common area that "is impossible to secure , . . . anything other than shoes is considered contraband and will be confiscated," and that because the door to the cell could not be locked, the only way to ensure that no one else accessed the area would require that "Petitioner . . . stay in the room 24 hours, seven days a week" and never leave to attend to any other purpose. Id. In support

---

[9] The undersigned presumes that Petitioner is referring to the BOP's Inmate Admission and Orientation Handbook, a copy of which is given to "newly committed inmates"  and which contains general information procedures and regulations developed to help [inmates] become better acquainted with the operations of [their] new community." See Inmate Admission and Orientation Handbook, *available at*: < https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf >

of his argument, he relies on <u>Denny v. Schultz</u>,[10] and <u>Cardenas v. Wigen</u>,[11] for the proposition that contraband found in a four-inmate cell has a 25% probability of belonging to any one inmate in that cell, and may be considered "some evidence," but that because as in his case, where contraband  is found in a 12-inmate cell, the probability of ownership being attributable to any particular inmate drops to 8.3%, which "at least one Court" decided would *not* be "some evidence." <u>Id.</u> at 6. He repeats his allegation that he was not afforded an impartial decision maker at his DHO hearing, because his Unit Manager was the acting DHO. <u>Id.</u> at 7. He argues that the Incident Report was "written on March 28, 2018 [sic] and was delivered on March 19, 2019 [sic]. These dates are conflicting." <u>Id.</u> at 8.

Attached to Petitioner's response with its memorandum in support is a sworn declaration, reiterating some of his arguments; several exhibits; a letter from his Unit Manager, explaining the reason for his untimely response; and a cover letter to the Clerk, explaining that he had been hospitalized for 39 days and asking that his untimeliness be excused. ECF No. 20-2 – 20-8.

**D. <u>Respondent's Reply</u>**

Respondent avers that Petitioner's arguments regarding an "inadequate" investigation lack merit, given that all that is required for due process in a DHO proceeding is if "some evidence" supports the decision. ECF No. 21 at 1. Further, citing to 28 CFR § 541.8(b), Respondent disputes Petitioner's claim that having his Unit Manager function as the acting DHO was a conflict of interest, given that the Unit Manager "was not a victim, witness, investigator, or otherwise significantly involved in the incident." <u>Id.</u> at 2. Finally, Respondent notes that Petitioner's allegations regarding discrepancies in the dates of the hearing and the date the DHO report was

---

[10] <u>Denny v. Schultz</u>, 708 F.3d 140, 145 (3rd Cir. 2013).

[11] <u>Cardenas v. Wigen</u>, 921 F.Supp. 286, 290 (E.D. Pa. Apr. 10, 1996).

delivered are also meritless, because BOP policy provides no set time period in which a written DHO report must be delivered to an inmate. Id. at 3.

**E. Petitioner's Surreply**

Petitioner again reiterates his arguments and attempts to refute the Respondent's.  ECF No. 22. He insists that "[t]he dates on the incident report are one year apart; when was this misbehavior report issued. There's a time limitation when a misbehavior report is issued . . . [this] incident report was not issued in a timely matter [sic]." Id. at 3.  He attaches copies of excerpts from unidentified publications regarding the role of a Unit Manager; staff accessibility to inmates; and DHO hearings. Id. at 4 – 6.

Because pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 11(d) and L.R. Civ. P. 7.02(b)(3), surreplies may not be filed without leave of Court, Petitioner's surreply will not be considered.

## IV. Standard of Review

**A. Motion to Dismiss, Fed.R.Civ.P. 12(b)(1)**

Under Federal Rule of Civil Procedure12(b)(l), a party may file a motion to dismiss for lack of jurisdiction over the subject matter.  A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  In considering a motion to dismiss pursuant to Rule 12(b)(l), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (internal quotation marks omitted).  A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal quotation marks omitted).  When a defendant asserts multiple defenses, "questions of subject

matter jurisdiction must be decided 'first, because they concern the court's very power to

hear the case.'" <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

**B. <u>Motion to Dismiss Fed.R.Civ.P. 12(b)(6)</u>**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief

that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); *see also*

<u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (applying the <u>Twombly</u> standard and

emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to

be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the

allegations in a light most favorable to the plaintiff. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231,

243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in

the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials

that are subject to judicial notice. <u>Anheuser-Busch, Inc. v. Schmoke</u>, 63 F.3d 1305, 1312 (4th Cir.

1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In <u>Twombly</u>, the Supreme Court, noting

that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do," <u>id.</u> at 555, upheld the dismissal of a Complaint where the plaintiffs did not "nudge[] their

claims across the line from conceivable to plausible." <u>Id.</u> at 570. Although courts are to liberally

construe *pro se* pleadings, *pro se* pleadings are not exempt from "<u>Twombly</u>'s requirement that a

pleading contain more than labels and conclusions." <u>Giarratano</u>, 521 F.3d at 304 n.5.

**C. <u>Motion for Summary Judgment, Fed.R.Civ.P. 56</u>**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed.R.Civ.P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

A *pro se* party's pleadings are generally construed more liberally and held to a less stringent standard than pleadings drafted by an attorney. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). However, even under that deferential standard, this Court can "pierce the veil of a complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

## V. **Analysis**

## Prison Disciplinary Proceedings

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

> 1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;
>
> 2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;
>
> 3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> 4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
>
> 5) providing impartial fact finders.

Id. at 564-571. However, due process requirements are defined by the United States Constitution, not an agency's regulations or guidelines. Sandin v. Conner, 515 U.S. 472, 485 (1995). Therefore, a violation of an agency regulation alone does not immediately constitute a constitutional claim. United States v. Caceres, 440 U.S. 741, 751-52 (1978).

In this case, as noted above, the contraband was discovered at 10:00 a.m. by M. Ramos on March 19, 2018. See Incident Report # 3101872, ECF No. 16-1 at 15. The description of the incident was that

> On 3/19/18 while conducting shakedowns in Building 5702, I entered room 347 and began shaking down 347 3L (Inmate Cruz #08143-067) to include shoes, books and other personal items under the lower bunk and locker. While looking through

10

several books stacked under the bed, I came across a Patricia Briggs book entitled "Shifting Shadows", [sic] where I noticed the entire interior was cut out and a Black, Samsung Smart Phone was placed in the middle. This item appeared to belong to Inmate Cruz.

Id.

Petitioner contends that on the morning of March 19, 2018, he was sitting in "assigned room 347" when an officer came and directed the inmates to evacuate the building. ECF No. 20-1 at 1 – 2. An hour later, he was called to the Lieutenant's Complex and placed in a cell; shortly thereafter, he was interviewed by Lt. Atkinson about the phone found inside the book; he informed Atkinson that he had "no knowledge of the book" or how the phone came to be inside of it. Id. at 2. Incident Report # 3101872 was prepared that same day, charging Petitioner with Offense Code 108, "possession of a portable telephone." Id. at 15.  A copy of the Incident Report was given to Petitioner at 5:50 p.m. that day. Id.

On March 23, 2018, the Unit Discipline Committee ("UDC") met and noted that Petitioner stated "that [the contraband] is not his." Id. at 15. Based on the seriousness of the charge, the UDC notified Cruz that the Incident Report on the charge was being referred to a DHO for further action. See Notice of Hearing, id. at 18.  Cruz signed to acknowledge having received the same. Id.  That same day, Johnson signed a form to acknowledge that BOP staff explained his rights as an inmate facing discipline. See Inmate Rights Form, id. at 20. Cruz was advised of his right to call witnesses and present documentary evidence at the disciplinary hearing. See Notice of Discipline Hearing; Inmate Rights Form. Id. at 18, 20. However, Cruz declined the opportunity to present both. See Notice of Discipline Hearing, id. at 18; DHO Report, id. at 22.

Petitioner was also advised of his right to have a staff member represent him at the disciplinary hearing but declined. See Notice of Discipline Hearing Before the (DHO) [id. at 18]; see also DHO Report, id. at 22. At the May 10, 2018 DHO hearing, Petitioner's statement

regarding the discovery of the contraband was summarized as "Inmate Cruz stated the phone was not his.  He did not know how the phone got under his bed. There was a major shakedown. Inmate Cruz stated anybody could have put that there." Id. § III (B).

Cruz received a copy of the written DHO report following the disciplinary hearing. See DHO Report, id. at 24. The report states that Cruz was advised of his rights as an inmate facing discipline. Id. at 22. Further, the report outlined the evidence relied upon by the DHO, the DHO's findings, the sanctions imposed, the reasons for the sanctions, and advised Johnson that he could appeal the disciplinary proceedings through the BOP administrative grievance process. Id. at 24.

Consistent with 28 C.F.R. § 541.8(b), Cruz was provided with an independent, impartial hearing officer, K. Byrd, Alternate DHO, who was not a witness, victim, investigator, or otherwise significantly involved in the alleged offense. See DHO Report, id. at 24.

The DHO's disciplinary findings were supported by sufficient evidence. "[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." Superintendent Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). The standard is satisfied if there is some evidence supporting the conclusion reached by the disciplinary board. Id. In Hill, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate.  The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway.  No other inmates were in the area." Hill, 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal

Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457

Here, the DHO considered a variety of evidence including the information in the incident report; investigatory memoranda; the Chain of Custody Log form signed by M. Ramos, the officer who found the contraband; the FCI Fort Dix Evidence Photo Sheet depicting pictures of the cover and interior of the book with the center cut out to conceal the cell phone; and Cruz's statement at the disciplinary hearing. See DHO Report, id. at 22 – 27. Ultimately, however, regardless of Petitioner's claims to the contrary, the DHO concluded that the greater weight of the evidence supported a finding that Petitioner had in fact possessed a hazardous tool in violation of BOP policy. Id. at 23, § IV (A). Petitioner was sanctioned with the loss of 41 days of GCT, 12 months' loss of phone privileges, and 6 months' loss of commissary.  Id. at 24, § VI. The DHO noted that the reasons for the sanctions were that

> [t]he action on the part of any inmate to possess a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.  Possessing such a device is a security risk.  Cell phones in the correctional environment circumvents the established security procedures utilized with the ITS System.

> Disallowance of Good Conduct Time, Loss of Phone, and Loss of commissary privileges[] are meant to demonstrate the seriousness of this offense to you as well as everyone incarcerated at this facility. The DHO hopes that these sanctions will motivate you towards more self-discipline in the near future. Furthermore, the sanctions imposed by the OHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

Id. at 24.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985).  When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed].  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . .

Id. at 457. In this case, the DHO found Petitioner had committed the act of possessing a hazardous tool, i.e., a cell phone, in violation of BOP policy. ECF No. 16-1 at 23. Because the item was found in Petitioner's cell, beneath Petitioner's bed, commingled with other personal items belonging to Petitioner, and Petitioner's only defenses were that (1) it was not his, and (2) that someone else had to have put it there, the DHO noted that he found Petitioner's statements to "have no merit." Further, the DHO stated:

> I find it hard to believe that this officer would fabricate a story and there is no evidence of any animosity toward you.  You have every reason to deny the charge and employee has no vested interest in you.  You also have not provided any evidence that the cell phone was not yours.  The greater weight of the evidence is supported by the officer's statement that they recovered a black Samsung Smart Phone from under your assigned bunk 347 3L in a cut out book titled "Shifting Shadows".  This item was recovered along with your shoes, books and other personal items.  This leads me to believe this cut out book only belonged to you. All inmates are to keep their living areas contraband free.  The DHO also took into the consideration the chain of custody log and the photo of the cell phone within the book.
>
> Based on the evidence provided before me, your actions are consistent with Code 108, Possession of a Hazardous Tool.

Id. (all punctuation errors in original).  The undersigned finds it notable that when given the opportunity to call witnesses on his behalf or present evidence, Petitioner did neither. Moreover, regardless of whether other inmates *could have* entered the area, at the hearing, Petitioner did not even attempt to suggest that any other inmate had actually done so. As for Petitioner's claim that BOP staff never proved that Petitioner was one who removed the book stamped "Property of Fort Dix" from FCI Fort Dix's library, the BOP had no obligation to do so, given that it was clear that the book and cell phone were commingled with the rest of Petitioner's property (shoes, other books

14

and unspecified personal property) under his bed.  Petitioner's reliance on 3rd and 7th Circuit law

suggesting that percentages of responsibility for contraband should be calculated by the number

of prisoners sharing a cell before it rises to a certain minimum standard of probability for "some

evidence" ignores the fact that in the cases he relies on, the contraband was found in a common

area of a multi-inmate cell where it could not be attributed to any particular inmate,[12] certainly not

the case here.  The Fourth Circuit has held that an inmate relying on a defense such as Petitioner's,

i.e., that "any inmate" could have entered the cell and placed the contraband there, must present

some evidence that  another inmate had actually done so; moreover, evidence found in the

"exclusive domain" of a particular inmate can be attributed to that inmate.   McClung v.

Hollingsworth, 2007 U.S. App. LEXIS 9558, * 6 – 8 (4th Cir. 2007) (per curiam). The Fourth

Circuit specifically declined to hold "that an inmate's unlocked cell, simply by virtue of being

unlocked, becomes transformed[] into a common area akin to a kitchen or television lounge[,]" and

that "Due Process . . . does not require continuous lockdown before allowing punishment for

possession of contraband found in inmates' cells." Id. at 10. Accordingly, the undersigned finds

that the DHO's decision is supported by "some evidence."

As for Petitioner's claim that he did not timely receive a copy of the Incident Report, or

that there was some sort of conflict between the date it was issued versus the date he was given a

copy of it, it is apparent from a careful review of the record that copy of the Incident Report was

delivered to Cruz at 5:50 pm on March 19, 2018, the day it was issued; however, admittedly, there

is a typographical error in the date noted as to when Petitioner was provided with a copy of the

---

[12] Denny, 708 F.3d at 142 (contraband found in the duct work of the vent above the sink between Denny's cell and another ) and Cardenas, 921 F.Supp. at 288 (contraband found in an unspecified common area of the cell, to which no direct evidence could attribute the forbidden materials to any individual inmate, but citing to Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992), where homemade weapons were found in a large vent in the cell occupied by 4 inmates, and could not be directly linked to any one of them).

Incident Report, showing it as "3-19-19" instead of "3-19-18." Id. This is immediately apparent to be error, given that all of the other relevant dates occurred in 2018.[13] Accordingly, Petitioner's contention that there was some sort of nefarious "conflict" in the issue and delivery date of the Incident Report, or his implied claim that there was some sort of unconscionable one-year delay in the delivery of his copy of the Incident Report are patently meritless. Further, Petitioner's repeated claim that the Incident Report was "written on March 28, 2018" is erroneous; it is apparent from the record that the Incident Report was written on March 19, 2018 and delivered to Petitioner the same day.

As for Petitioner's claim that he did not timely receive a copy of the DHO report so that he could appeal the decision, this claim, too, has no merit.  Following a disciplinary hearing, BOP policy requires the DHO to provide the inmate with a written report. See 28 C.F.R. § 541.8(h). The requirement and procedures for the written report are as follows:

> (h) Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not required to prepare a verbatim record of the hearing. The DHO's written report will document the following:
>
> (1) Whether you were advised of your rights during the DHO process;
> (2) The evidence relied on by the DHO;
> (3) The DHO's decision;
> (4) The sanction imposed by the DHO; and
> (5) The reason(s) for the sanction(s) imposed.

As evidence by these requirements, 28 C.F.R. 541.8(h) does not specify a time period for when the DHO's written report must be provided to an inmate. However, BOP Program Statement 5270.09 does provide that *ordinarily* the DHO gives the inmate a written copy of the decision and

---

[13] All relevant dates were in 2018: the date the investigation began ("3-19-18 5:50 p.m.") [id. at 16]; the date the investigation was completed ("3/19/18 6:10 p.m.")[id.]; the date the Unit Disciplinary Committee chairman signed the Incident Report ("03-23-18 0845") [id. at 15]; the date Cruz was advised of his rights by O. Pagan ("3-19-18 5:50 pm" [and] "3-23-18 at 8:45 am") [id. at 16]; the date Cruz signed the Notice of Discipline Hearing before the (DHO) ("3/23/18")[id. at 18]; the date Cruz signed the Inmate Rights at Discipline Hearing ("3/23/18")[id. at 20]; the date the DHO hearing was held ("5-10-2018") [id. at 24]; the date the DHO issued his report ("7/30/18") [id.]; the date the copy of the DHO report was delivered to Cruz ("7/30/18"). Id.

disposition within 15 working days after the DHO makes his/her decision. Therefore, even that policy does not *mandate* that the inmate receive the report within 15 days or within any specified time, let alone that an inmate is required to file an appeal within 15 days of the DHO's decision. The fact that Petitioner was able to fully exhaust his administrative remedies regarding the DHO decision before filing suit disproves his implied claim that the BOP's alleged untimeliness in providing him with a copy of the DHO report prejudiced him in any way.

Petitioner's equal protection claim, raised for the first time in his response in opposition, contends that he was treated differently than other inmates at FCI Fort Dix who are found in possession of contraband cell phones, because FCI Fort Dix did not send the phone found under his bunk to the FBI for forensic examination to determine who had been using it.  Because this type of investigation was not afforded to Petitioner, he avers that he was denied his right to equal protection. ECF No. 20-1 at 4.

Federal Rule of Civil Procedure 15 addresses Amended and Supplemental Pleadings. Fed.R.Civ.P. 15(a)(1)(B) states that a party may amend its pleading once as a matter of course within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  In all other cases, a party may only amend its pleading with the opposing party's written consent or the court's leave; the court should freely give leave when justice so requires. Fed.R.Civ.P. 15(a)(2). Here, Plaintiff filed his response in opposition on January 27, 2020, 89 days after Respondent filed its dispositive motion, without seeking leave of Court to add a new claim. Had Plaintiff wished to add this claim against Respondent to his pleadings at the summary judgment stage, he could have done so via a motion seeking leave to amend his petition pursuant to Fed.R.Civ.P. 15(a). However, even if this assertion regarding "equal

protection" were properly before the Court, the facts alleged do not support an inference that any equal protection violation occurred.

Finally, Petitioner's allegation that his acting DHO was not an impartial decision maker because he was his Unit Manager likewise has no merit; Petitioner has provided no evidence suggesting that the DHO sat on his UDC committee, or was "a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b).

There being no genuine issue of material fact, the undersigned finds that summary judgment should be granted to the Respondent.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or for Summary Judgment [ECF No. 15] be **GRANTED** and the petition [ECF No. 1] be **DENIED** and **DISMISSED with prejudice.**

Further, the undersigned **RECOMMENDS** that Petitioner's pending motions to proceed as a pauper [ECF No. 2] and for subpoena *duces tecum* [ECF No. 23] be **DENIED as moot**.

Pursuant to Fed.R.Civ.P. 25(d), the Clerk is **DIRECTED** to substitute Paul Adams as the Respondent in this action, because Paul Adams has replaced Frederick Entzel as the Warden of FCI Hazelton.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20)

handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to Cruz by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

DATED: June 15, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE